No. 36,344

A. E. DEMAREE, Appellant, v. S. L. BOARDMAN et al., Defendants, HERBERT ROCKHILL and ROY VAUGHN, doing business as EUREKA AUCTION SALE, Appellees.

(163 P. 2d 411)

Opinion filed November 10, 1945.

*Austin M. Cowan,* of Wichita, argued the cause, *Dale M. Bryant, Morris H. Cundiff,* both of Wichita, and *Edward E. Pedroja,* of Eureka, were on the briefs for the appellant.

*Thomas C. Forbes,* of Eureka, was on the briefs for the appellees.

The opinion of the court was delivered by

BURCH, J.: This appeal involves the right of the plaintiff to recover from two auctioneers the proceeds from the sale of hay. The district court sustained a demurrer to plaintiff's evidence and from such ruling appeal has been perfected. Examination of the record reveals that plaintiff filed in the district court a third amended petition which alleges in substance that the plaintiff on November 11, 1943, as a landlord, was the owner of an undivided one-half interest in a crop of prairie hay grown on plaintiff's farm; that on the above date the defendants, as auctioneers and clerk respec-

tively, were informed of plaintiff's undivided ownership and agreed to cry the sale, sell the hay and pay to plaintiff his proportion of the proceeds; that the hay was so sold but that the defendants, after demand therefor, had refused to pay the plaintiff. An answer was filed, containing, among other allegations, a denial of plaintiff's ownership in the hay and specific allegations to the effect that one A. D. Renard was the owner of all the involved hay on November 11, 1943. Consequently, under the pleadings, the principal primary question at issue was: By whom was the hay owned?

The plaintiff's evidence established that he was the owner of the farm on which the hay was grown and that the above-named A. D. Renard was his hold-over tenant under a written lease which provided that the landlord was the owner of a one-half interest in all stacked prairie hay; that three or four days before the sale on the aforesaid date, the plaintiff saw a public sale bill which set forth that the defendants would sell, among other items, about sixty tons of prairie hay on plaintiff's farm, which hay and other property were shown by terms of such sale bill as the property of A. D. Renard. The evidence also developed that on the morning of the sale the plaintiff and his attorney appeared at the farm and advised the defendant, Rockhill, who was clerking the sale, of plaintiff's ownership in the hay and that Rockhill, during that day, agreed to sell the hay and pay to the plaintiff one-half of the proceeds received therefor. Other evidence was introduced which corroborated the foregoing, but nothing is gained by reviewing it. On cross-examination the plaintiff, after timely objections by his counsel, was required to testify as to an exchange of correspondence between the plaintiff and his tenant relating to the alleged sale of the hay to the tenant. The principal objection to all questions pertaining to the correspondence was that such questions were not proper cross-examination. Such correspondence, however, was properly introduced for the purpose of possibly proving that the plaintiff was not the owner of the hay and the trial court did not err in admitting it for such purpose.

Examination of the correspondence reveals that the plaintiff had written a post card to his tenant, Renard, in July, thereon instructing the tenant to sell the plaintiff's share of the hay at the best price obtainable. On September 1st the tenant wrote the plaintiff as follows: "Will you take 45.00 for your share of wild hay on the ground? I have to hire machinery, & help, & its just not to

be had, or you can't by any, their is a fellow I maybe could sell it to, its high but maybe I could get it, . . . if he takes it will send M. O. as I don't know just very much about his checks." In reply thereto the plaintiff wrote: "If $45.00 is the best I can get for my share of the wild hay, presume I will have to take it." About two weeks after the reply was written, the tenant wrote the defendant the following: "The fellow who bought wild hay is selling some hogs to get the 45.00 soon, so when he gets his returns I'll send M. O. . . ." Later; instead of sending the plaintiff a money order, the tenant sent his personal check dated October 6, to the plaintiff, for $33, and requested the plaintiff to add a previously-made overpayment of $12 on another item, to the amount of the check, in payment for the hay. The check contained the following notation on its face: "Previous Ck 12.00 This ck 33.00 for all $45.00." and on the back thereof the following: "Bal. Due for ½ share of wild hay." The plaintiff endorsed and deposited the check and wrote the tenant on October 19 as follows: "Mildred forwarded me your letter which had enclosed the ck. on hay deal. I told her to deposit it to my acct. The way you explained it was O. K. Will be home in about 10 days. . . ."

When the plaintiff and his attorney arrived at the farm on the morning of the sale, November 11, they discovered for the first time that the tenant had not sold the hay to a third party but had cut and stacked it and was offering all of it for sale as the property of the tenant. The record does not disclose any conversation had that day between the plaintiff and his tenant, although it does show that the tenant was present and heard a conversation among the plaintiff, his attorney, and the defendant, Rockhill, in which the plaintiff claimed to be the owner of an undivided one-half of the hay. There is no evidence that the plaintiff at such time tendered or offered to return to the tenant the $45. Therefore, it will be seen that the plaintiff in effect sought to retain the consideration paid him by the tenant for the plaintiff's share of the hay and at the same time sought to repudiate the sale to the tenant without restoration of the *status quo*. In the case of *Dutton v. Dutton,* 113 Kan. 146, 213 Pac. 326, the syllabus reads as follows:

"1. One asking to rescind a contract based upon sufficient consideration and wholly executed, for fraud, must restore or offer to restore to the other party the money or thing received under the contract, and so far as practicable place him in the position he was in at the time of the execution of the contract.

"2. A party cannot affirm a contract in part and repudiate it in part nor hold some of its benefits and at the same time evade its disadvantages."

Paragraph two of the syllabus in the case of *Erdley v. Dixon*, 127 Kan. 142, 272 Pac. 154, reads as follows:

"A petition for the rescission of a contract is not complete without an offer of restitution of the amount paid thereunder, if any, or an allegation of excuse for retaining it, and without such offer or allegation is demurrable."

From the opinion the following is quoted:

". . . In this respect we think it lacks one very essential element, viz., an offer of restitution or to place the defendant *in statu quo.*

" 'In nearly all jurisdictions a bill is demurrable in which complainant does not offer to return any consideration which it shows that he has received, or otherwise place defendant *in statu quo,* or sufficiently excuse himself from that duty.' (9 C. J. 1241.)

" 'The vendor or grantor seeking cancellation of a contract of sale or of a conveyance must, as a general rule, restore any cash payment which has been made, or property or property rights given in consideration of the sale or conveyance.' (9 C. J. 1217.)" (p. 143, see cases cited at p. 144.)

The court is of the opinion that the principle of law followed in the foregoing cases is controlling in the present case and that for such reason the ruling of the district court must be affirmed. The plaintiff, in connection with the appeal, in his reply brief states that defendants are not in a position to ask that their liability to the plaintiff be reduced in the amount of $45 but that if this court feels that the plaintiff would be unjustly enriched if allowed to recover from the defendants as prayed for and still retain the $45 this court can order the plaintiff to pay the $45 into the court below to await disbursement. Obviously, such an offer in this court comes too late. The appeal must be decided on the record which was before the trial court at the time the demurrer was filed. Without an offer to make restitution, on the part of the plaintiff, having been proved, the plaintiff could not have claimed title to an undivided one-half of the hay at the time the trial court passed upon the demurrer. Consequently, the plaintiff's case failed to establish that he was the owner of the hay and he could not recover.

Many other questions have been presented to this court in connection with the appeal by attorneys for the respective parties but in view of the foregoing it becomes unnecessary for us to give consideration thereto.

The ruling of the district court sustaining the demurrer to the plaintiff's evidence is affirmed.

WEDELL, J. (concurring in result): This was not an action by a landlord against his tenant, but an action against auctioneers to recover the sale price of a one-half interest in stacked hay. The action was predicated upon the grounds (1) that at the time of the public sale plaintiff was the owner of such interest, and (2) that defendants, prior to the sale, entered into an agreement with plaintiff to deliver the sale price of such interest to him.

Time will not permit an analysis of the facts. I merely desire to say that, in view of the record before us, it is my opinion plaintiff, for a number of reasons, was not entitled to recover from the auctioneers on the theory he owned a one-half interest in the hay or that he had a contract enforceable against the defendant auctioneers, doing business under the name and style of Eureka Auction Sale. I, therefore, believe the demurrer to plaintiff's evidence was properly sustained.

BURCH, J. (dissenting): I dislike to dissent without having time to develop my reasons therefor, but I have only time to give one. of them in substance. I am of the opinion that the rule of law followed in the court's opinion as to the necessity of complete restitution is not controlling in the present case. On cross-examination of the plaintiff, counsel for the defendants also developed that the plaintiff on the same day immediately after he discovered that the tenant had not sold the hay to a third person, filed an action before a justice of the peace against the tenant, in which action the plaintiff sought to recover the value of his one-half of the hay for the same reasons set forth in the court's opinion. In that action the plaintiff offered to give the tenant credit for payment of the $45. The cross-examination also brought out that the plaintiff at the same time filed another action against the tenant on a verified account for $177.65. The law does not require a first party to offer money to a second party when the first party claims the second party owes the first party money in excess of the amount involved in the tender. The doctrine of refund is not technical but equitable. It does not require a man to be impractical. (See 12 Am. Jur. 1033, § 451, notes 11, 12, 13.)